UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.1:09-cr-21010-JEM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| JOEL ESQUENAZI, et. al. | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MOTION FOR VARIANCE/DOWNWARD DEPARTURE
FROM THE SENTENCING GUIDELINES**

Defendant, JOEL ESQUENAZI, through undersigned counsel, respectfully moves for a significant downward departure and/or variance, consistent with the law set forth in 18 U.S.C. § 3553(a), the Sentencing Guideline policies, fundamental due process, and the need to avoid a cruel and unusual punishment.[1]

### INTRODUCTION

On August 15th, 2011, Mr. Esquenazi was convicted on charges of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") (18 U.S.C. § 371), substantive violations of the FCPA (18 U.S.C. §§ 678dd-2(a)), conspiracy to commit money laundering and substantive violations of money laundering pursuant to 18 U.S.C. §§1956 and 1957.

---

[1] Mr. Esquenazi files this Motion in conjunction with his previously filed Factual and Legal Objections to the Presentence Investigation Report (D.E. 565), and respectfully adopts and incorporates the pleading of Carlos Rodriguez (D.E. 575), Motion for Variance and/or Downward Departure from the Sentencing Guidelines, in order to avoid duplicate filings.

CASE NO.1:09-cr-21010-JEM

Pursuant to Esquenazi's Presentence Investigation Report, after several contested enhancements, his offense level is 40 (24-30 YEARS).  Challenges to this guideline analysis have been filed.

**ARGUMENT**

**1.    A Plea for Sanity: The Offense Conduct**

Assuming as we must Mr. Esquenazi's guilt, an appropriate punishment is called for. The offense in this case is obtaining a business advantage with financial payments.  The amount of money at issue is somewhat contested but is arguably at most a little over two million dollars and possibly less, under one million dollars.  The offense conduct lasted about three years.

This case is NOT extreme; the conduct is NOT extreme; the amounts of money are NOT extreme - <u>only the guidelines ARE extreme</u>.  The guidelines were originally constructed to have some generalized similarities in sentences.  Factors of role, amount of money and offense conduct have always been relevant considerations, weighed against the defendant's lifetime conduct.

A Sentencing Guideline sentence, that numerically, is beyond sentences typically handed down for spousal abuse, cocaine smuggling, and oftentimes, murder, simply defies logic.  It defies equity, fairness, common sense and constitutional dictates.

After years of litigation, it became clear that the guideline's mandatory nature was not only ineffective, but seriously counterproductive and abhorrent to the Constitution. *U.S. v. Booker*, 543 U.S. 220 (2005):

> [A] sentencing court may conclude that a Guideline yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes. *Kimbrough v. United States*, 128 s.Ct. 558, 575 (2007), *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2464-65 (2007).

Sentencing Guidelines are not "presumptively reasonable" and are only advisory. *Nelson v. U.S.*, 555 U.S. 350 (2009).

2.     **The Other Primary Consideration: The Person**

As recited in the accompanying Sentencing Memorandum[2], Joel Esquenazi really is a good person. His family connection, his community giving, his spiritual being, are precisely the type of mitigation that works strongly in a man's favor on sentencing day. In fifty plus years of living, Mr. Esquenazi has one pending charge.[3] His community service is really at the heart of a good citizen - no big dollar donations, but hands-on giving to the neediest - Special Olympics children. Giving of his time to these kids - not because of one of his own has special needs, but because it is the spirit of giving of a community citizen is the make-up and character of Joel Esquenazi. Married for over thirty years; raising three healthy, educated and successful children; working in legitimate, self-employment throughout his life - this all leads to serious mitigation earned by a lifetime of goodness.

---

[2] Mr. Esquenazi incorporates his filed Sentencing Memorandum for purposes of this pleading (D.E. 618).

[3] Undersigned is fully aware of Case No. 11-cr-20112, pending for sentencing before Judge Donald Graham. Mr. Esquenazi's role appears both far less significant and it is noteworthy that Mr. Esquenazi entered a guilty plea in that matter. Respectfully, punishment for this offense lies with the Honorable Judge Graham.

## **CASE LAW**

The law now commands a sentence that is reasonable, both procedurally and substantively. *Gall v. U.S.*, 552 U.S. 38 (2007). This requires an accurate ADVISORY guideline sentence as well as full and proper application of the § 3553(a) factors. *Id.* at 51.

Respectfully, balancing the offense conduct <u>in a rational light</u> in conjunction with Mr. Esquenazi's character and history should result in a period of incarceration that is significantly below the current guideline recommendation of Level 40. "The justification (for downward variance) must be compelling enough to support the degree of the variance and complete enough to allow meaningful review. But the Supreme Court has specifically rejected the idea that an extraordinary justification is required for a sentence outside the guideline range." *U.S. v. Shaw*, 560 F.3d 1230, 1237-1238 (11th Cir. 2009).

In view of the extreme, excessive disparity in Mr. Esquenazi's sentencing guideline recommendation in contrast to the sentences of Mr. Esquenazi's co-defendants, the sentences handed down in similar cases in this circuit, the nature of his offense conduct, his background, and the advisory nature of the Guidelines post-*Booker*, a significant variance is warranted and justified.

Establishing by objective analysis how the guidelines erroneously skyrocketed out of control exists in two forms: first, an inherent review of the enhancements, and second, an analysis of sentencing relationships of the co-defendants.

A.     **Unreasonable Enhancement Punishment Compels a Downward Variance**[4]

Mr. Esquenazi essentially was convicted of making payments through third parties to employees of a company in Haiti. This was not a money laundering offense; it was a bribery offense, in which the conduct of money laundering was charged, convicted and <u>already included</u> within § 2C1.1 Guideline provision. With a sentence that already includes the punishment for conduct that is not the gravamen of the alleged activity, layering FIVE <u>ADDITIONAL</u> YEARS (§§ 2S1.1(b)(3) and 2S1.1(b)(2)(B) is constitutionally impermissible. It is further violative of the Fifth Amendment's protection against Double Jeopardy. The money laundering guidelines <u>incorporate</u> the bribery conduct; a double punishment for the same conduct. Whether the dollar amount is $2.2 million, as alleged, or less as argued by the Defendant, the sentencing guideline is STARTING at level 28 or 30 (78-97 or 87-108) (6 ½ years to 9 years).

As for role enhancement, the length of punishment in relation to the conduct of the other defendants, on its face, is completely improper. (Enhancement of NINE AND ONE HALF years, going from level 34 to 38.) (See page 6.)

The perjury allegation creates an ADDITIONAL TEN YEARS. Three of the four contested areas have nothing to do with the offense conduct, and are not material. Issues such as number of arrests, departure from the country and length of government inquiry

---

[4] It should be clear that this argument is in addition to the legal and factual objections to the propriety of the guideline provisions per se. This present argument is directed toward the constitutional need and propriety of a downward departure/variance based upon the constitutional unreasonableness of this sentence as it currently exists within the presentence investigation.

are so far removed from the context of the crime charged as to fundamentally and statutorily immaterial. Indeed, on its face, each question is so obviously within the parameters of government knowledge, as to evidence both nervousness of the testifying defendant and a misunderstanding of some of the questions. Confusion and mistake do not justify an increased sentence, nor does non-materiality justify an enhancement. *U.S. v. Dunnigan*, 507 U.S. 87 (1993).[5]

Respectfully, a defendant who testifies at trial as to his state of mind in a paper crime case is entitled to put forth his defense even if it disagrees with the government's theory. It should be given wide latitude and respect. And while this is an objection lodged as to the perjury enhancement itself, this also addresses the proper amount of necessary punishment.

Rational, sane, analysis says that a sentence to punish, deter, rehabilitate - with a balance of rationality and constitutional reasonableness is one that is sufficient but NOT GREATER THAN NECESSARY. Under no reasonable analyses do these three areas create a TWENTY FOUR AND A HALF YEAR PUNISHMENT.

**B.    Joel Esquenazi's Criminal Conduct in Relation to Others: UNWARRANTED DISPARITIES**

The proof of this unreasonableness is best established by review of the other co-defendants' sentences. The proposed guideline violates § 3553(a)(6): the NEED to avoid unwarranted disparities among similarly situated defendants.

---

[5] This Court is obliged to make specific independent findings on each <u>material</u> matter in order to apply the enhancement. *US v. Perez*, 350 Fed. App. 425 (11 Cir. 2009).

CASE NO.1:09-cr-21010-JEM

While the distinctions between Mr. Esquenazi and others are understood: trial versus plea, cooperation versus challenged testimony in his own defense, role and conduct, it is also true that the Government and the probation office applied a completely different guideline analysis to the co-defendants through the use of individual bribe payments rather than taking the offense as a whole.  Unless this defendant is being unconstitutionally punished for exercising his right to trial, he is entitled to the same consideration.  Inherently then, the lower number of $893,818.50 applies as to Mr. Esquenazi.  Further, unless the Court applied to the co-defendants the same stacking principles as those that drove up the guidelines of Mr. Esquenazi, as analyzed in Carlos Rodriguez's recent Supplemental Submission of Authorities in Support of his Motion for Variance (D.E. 619), (which Mr. Esquenazi adopts and incorporates herein) the guidelines are NOT being applied in a non-disparate manner.  Mr. Esquenazi is entitled to an equitable guideline analysis as all others defendants.

Mr. Esquenazi has been identified as a leader and organizer of this conspiracy, a "sentencing guideline" title, with which Mr. Esquenazi takes issue.  Respectfully, a cold review of the evidence reflects that each co-defendant, including those that testified for the Government, played significant, independent and critical roles.  The co-defendants were sentenced as follows:

    a.    Juan Diaz: 57 months - intermediary for bribe payment; highly active and, critical player in the offense conduct;

_____
MICHAEL J. ROSEN, P.A.
2937 S.W. 27TH AVENUE • SUITE 101 • MIAMI, FLORIDA 33133
TEL (305) 446-6116 • FAX (305) 446-6150
_____

Page 7 of 9

  b. Robert Antoine: 48 months - bribe "recipient", launderer of "bribes" organizer and hub of this conspiracy;

  c. Antonio Perez: 24 months - responsible for over a million and a half dollars, comptroller of Terra and individual responsible for the success of the continued conspiracy alleged;

  d. Jean Fourcand: six months - low level intermediary;

**all expecting Rule 35/5K1 departures**.

**C.** **Sentence Outside Parameters of This Case**

The need for the sentence to reflect the seriousness of the crime and promote respect for the law is best assessed by how other sentences across the country have been imposed in this area. It is understood that all cases are different, yet one feature is striking - undersigned has found NO CASE within the FCPA, in which the sentence imposed was a sentence that fit the recommended sentencing guideline - <u>everyone was lower</u>.

**CONCLUSION**[6]

Mr. Esquenazi understands his fate is incarceration - he asks only that this Court accomplish this equity and fairness, with a rational and appropriate sentence, one that lacks disparity, that is deterrence tempered with compassion of a person who really

---

[6] On balance, there is no reason to believe that Mr. Esquenazi is <u>any</u> threat to the public by any criminal conduct. Indeed, his good deeds evidence a truly good person who made bad business decisions. There is no justifiable basis to believe there is a continued threat of <u>any</u> criminal conduct.

CASE NO.1:09-cr-21010-JEM

warrants very favorable mitigation - all recognized under the analysis of 18 U.S.C. § 3553(a) and the Fifth and Eighth Amendments.

**WHEREFORE**, for the reasons expressed in the Sentencing Memorandum, the previously filed objections and this Memorandum which addresses the issues within § 3553, the grounds for variance and/or downward departure as expressed by the co-defendant, Carlos Rodriguez's pleading and the accompanying legal analysis, and for the matters set forth herein, Defendant, Joel Esquenazi, most humbly and respectfully requests a sentence consistent with the co-defendants in this matter.

Respectfully submitted,

Law Offices of Michael J. Rosen, P.A.
Counsel for Defendant, Joel Esquenazi
2937 Southwest 27th Avenue, Suite 101
Miami, Florida 33133
TEL:   305-446-6116
FAX:   305-446-6150

By: *s/ Michael J. Rosen*
    Michael J. Rosen, Esq.
    Florida Bar No. 183719
    mjr@mjrosenlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of October, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system (CM/ECF) upon counsel of record.

*s/ Michael J. Rosen*